

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2008

# USA v. Holt

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3579

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Holt" (2008). *2008 Decisions.* Paper 1023.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1023

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3579

_____

UNITED STATES OF AMERICA

v.

GEORGE R. HOLT,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cr-00098)
District Judge:  The Honorable William W. Caldwell

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 3, 2008

Before:  FISHER and JORDAN, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed:   June 13, 2008)

_____

OPINION

_____

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

George R. Holt appeals the sentence imposed on him by the District Court after he pleaded guilty to one count of conspiracy to commit bank fraud and one count of bank fraud. Holt argues the District Court erred in applying a two-level leadership role increase to Holt's offense level under the United States Sentencing Guidelines. For the reasons discussed below, we will affirm.

## I.

The criminal scheme at issue in this case began as a part of Holt's employment with a church, Shared Ministries. Shared Ministries hired Holt to work as a part-time administrative assistant on June 6, 2006. Shortly after beginning his employment at the church, Holt obtained the social security number of the church's choir director. He and his codefendant, Toni Lewis, used the number to open two credit card accounts in the director's name, and they subsequently made $16,801.67 in unauthorized purchases with the cards. They also took $9586.75 in contributions and payments that had been mailed to the church and deposited the money in an account at PNC Bank that Lewis opened in Shared Ministries' name. Finally, they used the church's Office Max credit card to make $730.17 in unauthorized purchases.

On March 7, 2007, a grand jury indicted Holt on the following counts: (1) conspiracy to commit fraud, in violation of 18 U.S.C. § 371; (2) bank fraud, in violation of 18 U.S.C. § 1344(1) & (2); (3) identification fraud, in violation of 18 U.S.C.

§ 1028(a)(7) & (b)(1)(D); (4) access device fraud, in violation of 18 U.S.C. § 1029(a)(2) & (c)(1)(A)(i); and (5) making false statements to a federally insured credit union, in violation of 18 U.S.C. § 1014. Pursuant to a plea agreement, Holt pled guilty to the first two counts of the indictment on April 18, 2007. The statutory maximum terms of imprisonment were five years for the first count and thirty years for the second count.

The presentence investigation report recommended a two-level increase to Holt's offense level under U.S.S.G. § 31B.1(c).[1] This recommendation was based on the following evidence of Holt's leadership role in the scheme. In a statement given to police on November 16, 2006, Holt admitted that he asked Lewis to open the account at the PNC Bank. He also explained that he applied for two credit card accounts and opened a post office box in Shared Ministries' name to receive the credit card bills. Holt further admitted that he had the address on the credit cards changed so the bills would not be sent to Shared Ministries' main office.

---

[1]Section 3B1.1 provides:
Based on the defendant's role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The United States Attorney's office interviewed Holt on March 8, 2007. During this interview, Holt provided a more detailed explanation of the scheme. He told the interviewer that all of the employees at Shared Ministries were female, and if they had not been, he would not have needed Lewis to assist him with the scheme. He also said that it was his idea to obtain the credit cards using the choir director's name and it was his idea to take the checks that were mailed to Shared Ministries. Holt also explained that he had Lewis open the PNC account because he worked at the church and did not want his name on the account. He said that he set up the bank account to require two signatures to withdraw money because he did not want Lewis to scam him. Holt told the investigator that he and Lewis evenly split the money that went into the account.

Lewis was interviewed by investigators on April 11, 2007. She explained that Holt called her in July 2006 and said he had a plan that he did not want to discuss with her over the phone. When they met, Holt explained to Lewis that he had a plan to obtain money and that Lewis would receive $1000 for her assistance. According to Lewis, Holt told her that he had a credit card in the choir director's name, explaining that the director was in jail and had given Holt permission to use the card. Lewis said that she and Holt applied for a second credit card using the choir director's name. Lewis explained that they went on one shopping spree with the cards. She further admitted that Holt gave her approximately $50 to $100 in cash from the credit cards on three or four occasions.

4

According to Lewis, about a month after they used the credit cards, Holt called her and asked her to open a bank account. She initially refused, but she agreed after Holt asked her for the third time. Lewis admitted that after she saw money was going into and out of the account, she decided to use some of the money in the account to pay three utility bills, and she wrote additional checks for cash, totaling somewhere between $500 and $660.[2]

Holt objected to the presentence investigation report's recommended two-level increase, and the District Court held a hearing on August 22, 2007. At the hearing, Holt testified that the scheme actually began when Lewis visited him while he was working at Shared Ministries. Holt stated that while Lewis was there, she brought up the idea of using other people's social security numbers to obtain credit cards. He further testified that it was his idea to open the bank account and that he gave Lewis the information she needed to open the account in Shared Ministries' name. Holt admitted that he opened the credit card accounts with information he received from the church files and that Lewis did not have anything to do with opening those accounts. He also admitted to opening the post office box himself. Finally, Holt testified that he gave Lewis a key to the church, and sometimes she would take checks from the church without his knowledge.

---

[2]The government calculated that Lewis received less than $2000 of the $27,000 Holt and Lewis stole.

After Holt's testimony and arguments from the attorneys regarding the two-level increase, the District Court concluded: "I agree totally with the position of the prosecution on this point, and I will deny the objection that has been made in the presentence report. I think Mr. Holt was in a directing leadership type role, although Ms. Lewis certainly went along willingly. Without him this whole thing couldn't have happened . . . ." The District Court subsequently applied the leadership role enhancement and sentenced Holt to concurrent terms of sixteen months' imprisonment on each count; restitution in the amount of $17,456; a $200 special assessment; and concurrent terms of three years' supervised release on each count. Holt timely filed an appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's interpretation of the advisory sentencing guidelines, and we review the District Court's factual findings for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). Any factual findings must be supported by a preponderance of the evidence. *Id.* at 568.

## III.

Holt argues that during sentencing he testified that it was Lewis's idea to use the choir director's social security number to obtain the credit cards. He also points out that Lewis opened the PNC account, spent the money in the account, and used the credit

6

cards. Holt concludes that this evidence shows the scheme was undertaken jointly. He further contends that there is no evidence that he controlled or supervised Lewis, and the existence of an additional participant who bore equal responsibility for planning and organizing the crime is insufficient to justify the enhancement. Finally, Holt argues that the District Court's finding that "without him this whole thing couldn't have happened" is not an adequate basis on which to apply the enhancement.

"To apply section 3B1.1, a district court must find that the defendant exercised control over at least one other person." *United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992). The District Court must also find that there were multiple participants in the crime and that there was some differentiation in their relative culpabilities. *Id.* at 1405. Factors to consider when determining whether to apply a § 3B1.1 enhancement include:

> (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.

*United States v. Gricco*, 277 F.3d 339, 358 (3d Cir. 2002) (quoting *United States v. Hunter*, 52 F.3d 489, 492 (3d Cir.1995)). The government need not present evidence of every factor or evidence that the defendant is the sole or predominate leader; rather, it need only show sufficient evidence to justify a finding that the defendant is a leader or organizer under § 3B1.1. *United States v. Bass*, 54 F.3d 125, 128-29 (3d Cir. 1995).

7

Although the District Court could have gone into a more detailed analysis of the factors before it applied the two-level leadership increase, it did not err when it applied the increase. The District Court found that Holt directed Lewis, and it recognized that there were multiple participants with different culpabilities. Thus, the two *Katora* prerequisites for applying the leadership enhancement were met.

Furthermore, the District Court adopted the government's position on the two-level leadership increase. In its sentencing memorandum and at the sentencing hearing, the government argued that Holt's first statements, in which he admitted that he recruited Lewis to help him in the scheme, opened the credit card accounts, provided the information necessary to open the bank account, came up with the idea to steal the checks, opened the post office box, and directed and supervised Lewis's activities demonstrated that Holt had a leadership role in the scheme. The government also argued that Holt's testimony to the contrary at the sentencing hearing was not credible. The District Court clearly stated that it agreed with the government's version of the facts.

Examining this evidence, which the District Court accepted, in light of the factors that should be considered in applying the leadership enhancement shows that the evidence supports the finding that this scheme was not simply a jointly planned and executed scheme. First, there was evidence that Holt exercised decision-making authority by determining which credit cards to open, by opening the post office box, and by directing Lewis to open the bank account. Additionally, Holt admitted that he was the one who

accessed the choir director's social security number and the information about the church that was necessary to open the bank account. Gathering this information and opening the credit card accounts and post office box demonstrated that Holt's participation in the scheme was greater than Lewis's participation. Similarly, the evidence demonstrated that Holt had a larger degree of participation in planning and organizing the crimes because opening the bank account, credit cards, and post office box were his ideas. Although Holt denied that it was his idea to open the credit card accounts, he did not do so until the sentencing hearing, and the District Court accepted the government's position that this testimony was not credible and that it contradicted the information he and Lewis previously gave the investigators.

Lewis also told investigators that Holt recruited her as an accomplice, demonstrating that Holt initiated the scheme. Further supporting this finding is Holt's admission that he only needed Lewis's assistance in the scheme because all of the other church employees were female. Additionally, although there was conflicting evidence about how Holt and Lewis split the profits, there was some evidence that Holt had a larger portion of the profits. Given all of this evidence, the District Court did not err when it determined that the facts amply demonstrated that Holt met most, if not all, of the factors, concluded that he was a leader or organizer of the scheme, and applied a two-level enhancement for a leadership role to Holt's offense level.

We will therefore affirm the judgment of the District Court.

9